IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT JOHN RICHARDSON, JR. )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of Social Security,[1] )<br>)<br>Defendant. )<br>) | Civil Action No. 3:17-122 |

AMBROSE, Senior District Judge

# OPINION
## and
# ORDER OF COURT

## SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 10 and 12]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 11 and 13]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Defendant's Motion for Summary Judgment [ECF No. 12] and denying Plaintiff's Motion for Summary Judgment [ECF No. 10].

## I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act") and for Supplemental Security Income ("SSI") under

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

Title XVI of the Act. On or about July 29, 2013, Plaintiff applied for DIB and SSI. [ECF No. 6-10 (Exs. B2D, B3D)]. Plaintiff alleged that he had been disabled since August 1, 2009, due to a hearing disability, back injury, and learning disability. [ECF Nos. 6-6 (Ex. B4A); 6-13 (Ex. B2E)]. On or about November 10, 2015, Plaintiff amended his alleged onset date to March 24, 2012. [ECF No. 6-10 (Ex. B6D)]. His date last insured was March 31, 2015. [ECF No. 6-2, at 17]. The state agency denied his claims initially, and he requested an administrative hearing. [ECF Nos. 6-6 (Exs. B3A, B5A); 6-8 (Ex. B6B))]. Administrative Law Judge ("ALJ") Suzanne Krolikowski held a hearing on November 10, 2015, at which Plaintiff was represented by counsel. [ECF No. 6-3, at 35-110]. Plaintiff appeared at the hearing and testified on his own behalf. Id. A vocational expert also was present at the hearing and testified. Id. at 91-103. In a decision dated May 12, 2016, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. [ECF No. 6-2, at 15-29]. Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on May 12, 2017, the Appeals Council denied Plaintiff's request for review. [ECF No. 6-2, at 1-3]. Having exhausted all of his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. [ECF Nos. 10 and 12]. The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally,

the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the initial burden of demonstrating by

medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

**B.    WHETHER THE ALJ PROPERLY DETERMINED PLAINTIFF'S RFC**

At Step Two of his analysis, the ALJ found that Plaintiff had the following severe impairments: degenerative changes in the cervical spine with cervicalgia and peripheral neuropathy; headaches; vertigo; anemia/low hemoglobin; and hearing loss. [ECF No. 6-2, at 17-20]. The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that Plaintiff was limited to: occasional pushing/pulling functions with the dominant right upper extremity; he retained the ability for occasional postural maneuvers of climbing ramps and stairs, balancing, and stooping, but was precluded from crouching, kneeling, crawling, or climbing ropes, ladders, and scaffolds; he was precluded from overhead reaching with the right upper extremity but was capable of occasional reaching in all other directions with the right upper extremity; he could frequently feel and occasionally finger and handle with the right upper extremity; he was precluded from working in high, exposed places or around moving mechanical parts, operating motor vehicles, or from work involving vibration; he was intolerant of more than moderate intensity noise levels and lighting that is brighter than that typically found in an indoor work environment such as an office or retail store. [ECF No. 6-2, at 21-22]. The ALJ concluded that jobs existed in significant

numbers in the national economy that Plaintiff could perform, including counter clerk and host/greeter. Id. at 27-28.

Plaintiff argues that the ALJ mischaracterized the evidence and thereby failed to determine an accurate RFC for him. [ECF No. 11, at 4-6]. In this regard, Plaintiff first contends that the ALJ erroneously asserted that treating primary care physician, Basma Khalil, M.D., did not have an extensive longitudinal record for Plaintiff and, consequently, improperly rejected Dr. Khalil's opinions on this basis. Plaintiff seeks remand for a new decision "fully crediting" Dr. Khalil's opinions and revising the RFC accordingly. This argument is without merit.

Dr. Khalil began treating Plaintiff around August 2015, taking over from David Holsinger, M.D., who had treated Plaintiff from approximately December 2011. Two months later, in October 2015, Dr. Khalil prepared a check-box Disability and Physical Capacities Evaluation indicating that Plaintiff was capable of sitting and standing for two to four hours each in an eight-hour day and walking for four to six hours in an eight-hour workday with an ability to alternate these functions to complete the workday. [ECF No. 6-24 (Ex. B7F)]. In addition, the form recommended a maximum lifting weight of 30-40 pounds occasionally, and stated that Plaintiff could occasionally bend from the waist, stoop, and lift; and should avoid kneeling, crawling, and climbing. Id. The form further opined that Plaintiff needed to lay down periodically 1-2 hours per day for the relief of pain and would be unable to attend work at least 2-3 days per month. Id. The ALJ gave partial weight to Dr. Khalil's opinion, stating that the portion of the opinion stating that Plaintiff needed to lie down for 1-2 hours a day and would miss work 2-3 days per month was unsupported by the evidence as a whole, including Plaintiff's testimony that a blood transfusion improved his symptoms related to anemia; Dr. Khalil's indication that Plaintiff was taking too many Norco tablets causing dizziness; and Dr. Khalil's conservative treatment regimen. [ECF No. 6-

5

2, at 25]. The ALJ also found that Dr. Khalil did not have sufficient longitudinal knowledge of Plaintiff's medical status. Id.

Plaintiff's argument that the ALJ's finding regarding Dr. Khalil's lack of longitudinal knowledge mischaracterizes the evidence is unpersuasive. It is undisputed that Dr. Khalil had treated Plaintiff for only a few months prior to completing the October 2015 evaluation form. See ECF No. 6-22 (Ex. B5F); ECF No. 6-3 (Pl.'s Testimony), at 56. This brief span hardly can be considered sufficient to establish "longitudinal" knowledge. Plaintiff's contention that the record nevertheless establishes longitudinal knowledge because Dr. Khalil had access to the records and diagnostic studies of her predecessor, Dr. Holsinger, does not change my conclusion. Even if I were to consider Dr. Holsinger's records as part of Dr. Khalil's basis of knowledge, the parties agree that those records are decidedly sparse. See ECF No. 11 (Pl.'s Br.) at 5 ("It is undeniable that the prior primary care doctor, Dr. Holsinger, kept sparse records."); ECF Nos. 6-3 & 6-4, at 106-109 (discussion between ALJ and counsel at hearing about sparseness of records); ECF No. 6-3 at 82 (Plaintiff testimony agreeing that records were minimal and explaining that Dr. Holsinger "talked to me but he never wrote any records"); see also ECF Nos. 6-21 (Ex. B3F); 6-22 (Ex. B5F). Further, and in any event, I find nothing within those records that supports the limitations that the ALJ rejected (i.e., the need to lie down for 1-2 hours a day and to miss work 2-3 days per month). In addition, Plaintiff ignores the fact that "lack of longitudinal knowledge" was not the only reason on which the ALJ relied in weighing Dr. Khalil's opinion. As set forth above, the ALJ also relied on inconsistencies between Dr. Khalil's opinion and her own treatment records including Plaintiff's conservative treatment regimen and noted improvement with treatment. [ECF No. 6-2, at 25]. It is well-established that inconsistency and lack of support are valid and

acceptable factors in weighing opinion evidence. See 20 C.F.R. §§ 404.1527; 416.927.[2] For all of these reasons, I disagree that the ALJ mischaracterized Dr. Khalil's knowledge of Plaintiff's medical status and/or otherwise erred in assigning Dr. Khalil's opinion partial weight.

Second, Plaintiff contends that the ALJ mischaracterized the evidence by confusing the gross motor and strength functions of Plaintiff's left upper extremity with the fine motor movements diminished by the tremors and shaking in both of Plaintiff's arms and hands and, therefore, erred by including in the RFC only limitations on Plaintiff's right upper extremity and not on the use of his left arm, hand, fingers, or upper extremity. [ECF No. 11, at 6]. Again, I disagree.

As an initial matter, the ALJ did not ignore the alleged shaking in Plaintiff's hands and tremors in his arms. Rather, she noted both conditions but did not find that those conditions warranted additional limitations in the RFC. ECF No. 6-2, at 26 (noting, inter alia, that gabapentin was prescribed for the shaking in Plaintiff's hands and that the tremors had not involved diagnostic evaluation or medical attention). Contrary to Plaintiff's suggestion, the March 19, 2014 report of consultative examiner Bushra Rizvi, M.D. does not support his argument that the ALJ confused the evidence in this regard. [ECF No. 6-22 (Ex. B4F)]. Although Dr. Rizvi noted that Plaintiff's "arms have significant tremors on performing any activity," he did not note any associated

---

[2] To the extent Plaintiff suggests that the ALJ should have given Dr. Khalil's opinion great weight as a matter of law simply because she was a treating physician (see ECF No. 11, at 5), this argument is without merit and misapprehends the applicable regulations. It is well-established that the opinion of a treating physician need not be viewed uncritically. Rather, only when an ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," must she give that opinion controlling weight. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). Id. Unless a treating physician's opinion is given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient/physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. Id. § 404.1527(c); 416.927(c). In this regard, I further note that the ALJ did not reject Dr. Khalil's opinion in its entirety. Rather, she gave it partial weight and restricted Plaintiff to light exertion with significant additional limitations based on portions of that opinion and other consistent medical evidence of record. See ECF No. 6-2, at 23-25 (discussing limitations stemming from Plaintiff's upper right extremity impairment, vertigo, and headaches).

limitations or impose any restrictions on the use of Plaintiff's left extremity. To the contrary, Dr. Rizvi noted that the power in Plaintiff's right upper extremity was 4/5, but 5/5 in the rest of his extremities. Id. Dr. Rizvi also documented greater range of motion in Plaintiff's left wrist and hand than in his right, and noted that while Plaintiff had decreased grip strength (40%) on the right side, his left side was normal. Id. Dr. Rizvi tested Plaintiff's ability to zip, button, and tie, and noted that Plaintiff had trouble with all of them when using his *right* arm. Id. Significantly, on the medical source statement attached to his report, Dr. Rizvi placed a number of restrictions on the use of Plaintiff's right hand with respect to reaching, handling, fingering, feeling, pushing, and pulling, but **no** such restrictions on the use of Plaintiff's left hand. Id. Indeed, Dr. Rizvi opined that Plaintiff could "continuously" use his left hand to reach, handle, finger, feel, push, and pull. Id.

For all of these reasons, I find that the ALJ's opinion accurately discusses the record concerning Plaintiff's tremors and shaking, and that substantial evidence supports her RFC finding with respect to the use of Plaintiff's upper extremities and/or fine motor movements. Because the ALJ did not mischaracterize the evidence, remand is not warranted on this issue.

C. **WHETHER THE ALJ IMPROPERLY EVALUATED PLAINTIFF'S SUBJECTIVE COMPLAINTS**

Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility and finding Plaintiff's complaints of pain not entirely consistent. [ECF No. 11, at 7-11]. In particular, Plaintiff quotes the following portion of the ALJ's opinion as problematic:

> The undersigned finds that there are medically determinable impairments that could reasonably be expected to cause the alleged symptoms. The claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the evidence for the reasons explained in this decision.

ECF No. 11, at 8 (quoting ECF No. 6-2, at 26)]. Plaintiff criticizes this passage as "boilerplate"

8

and "exactly the kind of conclusory, post hoc determination" that Social Security guidance prohibits. Id. This argument mischaracterizes the ALJ's opinion and is entirely without merit.

In considering the intensity, persistence, and limiting effects of an individual's symptoms (including pain), the ALJ will examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record. SSR 16-3p.[3] Additionally, the ALJ will consider statements from treating, examining and consulting physicians; observations from agency employees; and other factors such as the claimant's daily activities, descriptions of the pain, precipitating and aggravating factors, type, dosage, effectiveness, and side effects of medications, treatment other than medication, and other measures used to relieve the pain. 20 C.F.R. §§416.929(c), 404.1529(c); SSR 16-3p. The ALJ also will look at inconsistencies between the claimant's statements and the evidence presented. Id. I must defer to the ALJ's determinations, unless they are not supported by substantial evidence. See Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974); Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir.2003).

After a review of the record, I find that the ALJ followed the proper method as set forth above. [ECF No. 6-2, at 25-27]. Although the quote Plaintiff cites above is accurate, it is not, as

---

[3] In her brief, Plaintiff cites Social Security Ruling 96-7p extensively in support of her argument on this point. [ECF No. 11, at 7-11]. Ruling 96-7p, however, was rescinded and superseded by Social Security Ruling 16-3p, effective March 28, 2016. Although Plaintiff recognizes Ruling 16-3p and its effective date, she nevertheless contends Ruling 96-7p was applicable at the time of the ALJ's decision. Id. at 7 n.2. This assertion is incorrect. Contrary to Plaintiff's contention, the date of the ALJ's opinion in this case, May 12, 2016, post-dates the March 28, 2016 effective date, and, therefore, Ruling 16-3p applies. See 82 Fed. Reg. 49462 (clarifying that SSA adjudicators will apply Ruling 16-3p when making determinations and decisions after March 28, 2016). Although the two rulings do not materially differ in substance, Ruling 16-3p eliminates the use of the term "credibility" and clarifies that "subjective symptom evaluation is not an examination of an individual's character." S.S.R. 16-3p.

Plaintiff suggests, the sum total of the ALJ's analysis of Plaintiff's subjective complaints. As Defendant correctly notes, Plaintiff's argument ignores the substantial portion of the ALJ's decision evaluating Plaintiff's subjective complaints in detail. In this regard, for example, the ALJ compared the medical evidence and other evidence of record to Plaintiff's complaints and found that they were not entirely consistent. Id. Among other things, the ALJ discussed the lack of diagnostic evaluation or medical attention regarding certain symptoms; Plaintiff's reported activities of daily living; medical records reflecting conservative care; medical opinions inconsistent with the level of functional loss claimed; and Plaintiff's medication history. Id.

In addition to his general arguments, Plaintiff singles out the ALJ's evaluation of his headache complaints as an example of the ALJ's alleged lack of attention, stating that the ALJ addressed only a single statement regarding the headaches, *i.e.*, Plaintiff's testimony that he just takes Tylenol for them, and ignored his other headache-related complaints. [ECF No. 11, at 8-11]. Again, Plaintiff misstates the ALJ's analysis. Contrary to Plaintiff's assertion, the ALJ discussed Plaintiff's headaches and alleged symptoms throughout her decision and, despite the lack of objective evidence regarding headaches, she gave Plaintiff the "benefit of the doubt" and relied on his testimony regarding headaches to impose headache-related limitations in her RFC finding. See ECF No. 6-2, at 19, 22-25 (noting that Plaintiff is intolerant of more than moderate intensity noise levels and lighting that is brighter than that typically found in an indoor work environment such as an office or resource store). Although the ALJ did not credit all of Plaintiff's headache-related complaints, she considered the appropriate factors and explained the reasons for her decision in accordance with the applicable regulations and guidance as set forth above.

I note that Plaintiff spends a significant portion of this section of her brief quoting Plaintiff's hearing testimony as evidence supporting greater limitations due to Plaintiff's headaches. [ECF

10

No. 11, at 9-11].[4] The standard, however, is not whether there is evidence to establish Plaintiff's position but, rather, is whether there is substantial evidence to support the ALJ's findings. See Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Thus, this argument is likewise misplaced.

For all of these reasons, I find the ALJ properly evaluated Plaintiff's symptoms as required by 20 C.F.R. §§ 416.929, 404.1529 and SSR 16-3p. Furthermore, based on the record as a whole, I find there is substantial evidence to support the ALJ's decision that Plaintiff's complaints of pain, including his headache-related complaints, are not entirely consistent. [ECF No. 6-2, 22-27]. Therefore, I find no error in this regard, and remand is not warranted on this basis.

**D. WHETHER THE ALJ RELIED ON AN INCOMPLETE HYPOTHETICAL QUESTION**

Plaintiff argues that the ALJ relied on an incomplete hypothetical question because she failed to include all of Plaintiff's limitations, including Dr. Khalil's limitations related to absences from work and the need to lie down. [ECF NO. 11, at 11]. I disagree.

It is well-settled that the law only requires the ALJ to include limitations supported by the record in her hypothetical question to the vocational expert. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). As set forth above, Plaintiff's arguments that the ALJ improperly evaluated the severity of his impairments and failed to include certain limitations in her RFC finding are without merit. Further, and in any event,

---

[4] Plaintiff also contends that the ALJ misstated the evidence when she stated that "[a]ccording to the claimant he only takes Tylenol for his headaches." [ECF No. 11, at 11]. Specifically, Plaintiff states that this statement ignores the non-medication measures he uses to control his headaches as well as the fact that Plaintiff was prescribed other medications such as Lortab, Norco, and Aleve. This contention is without merit. The ALJ's statement with which Plaintiff takes issue accurately quotes Plaintiff's hearing testimony on this matter. See ECF No. 6-3, at 65-66 (Plaintiff's testimony that he takes Tylenol for his headaches, and that, although his doctor suggested trying Aleve instead, he had chosen not to try that). Moreover, the ALJ noted that Plaintiff also was prescribed Norco and Lortab for pain. [ECF No. 6-2, at 19, 23-25]. To the extent Plaintiff cites Dr. Khalil's proposed limitations regarding time absent from work and the need to lie down, the ALJ appropriately declined to credit those limitations as previously discussed. With respect to Plaintiff's subjective complaints themselves, the ALJ again properly evaluated them in accordance with applicable regulations.

the ALJ not only obtained vocational expert testimony at the hearing, but also incorporated numerous limitations supported by the record in her hypothetical questions to the VE. [ECF No. 6-3, at 98-101]. In response to the ALJ's questioning, the VE concluded that there was work in the local and national economy that such an individual could perform. Id. As explained fully in the preceding sections, substantial evidence supports the ALJ's conclusion that Plaintiff did not have any greater limitations.

Because the ALJ properly considered Plaintiff's limitations supported by the record, including limitations related to his headaches, I find no error on this issue.

### III. CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT JOHN RICHARDSON, JR.,

    Plaintiff,

vs.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

    Defendant.

Civil Action No. 3:17-122

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 5th day of June, 2018, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendant's Motion for Summary Judgment [ECF No. 12] is GRANTED, and Plaintiff's Motion for Summary Judgment [ECF No. 10] is DENIED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).